# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: J.K. and C.K.**

**No. 13-1008** (Mingo County 12-JA-67 and 12-JA-68)

**FILED**

**March 31, 2014**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioner Father filed this appeal by his counsel, Donald C. Wandling. His appeal arises from the Circuit Court of Mingo County, which terminated his parental rights to one-year-old J.K. and three-year-old C.K., by order entered on September 13, 2013. The guardian ad litem for the children, Lauren Thompson, filed a response in support of the circuit court's order. The Department of Health and Human Resources ("DHHR"), by its attorney, William P. Jones, also filed a response in support of the circuit court's order. Petitioner argues that the circuit court erred in finding that petitioner abused and neglected the subject children and erred in finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. Petitioner also argues that the DHHR's Family Case Plan failed to comply with the requirements of West Virginia Code § 49-6D-3(a).

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed an abuse and neglect petition for this case in September of 2012 after it received a referral from the Tug Valley Recovery Center, where the children's mother, K.H., and the children were residing. The DHHR's investigation revealed that K.H. was having hallucinations and delusions that three-year-old C.K. was possessed and that there was someone in a tree outside throwing blood at her. The DHHR also discovered that K.H. once left one-year-old J.K. on a shaky table by herself; that on another occasion, K.H. and J.K. went missing from the center for about twenty-five minutes; that K.H. suffers from a bipolar condition for which she has refused encouraged treatment; that K.H. has left the children unsupervised; and that K.H. once gave child C.K. a double dose of medicine because she had forgotten to give him a dose the prior day. The petition also alleged that upon speaking with petitioner, the Child Protective Services ("CPS") worker learned that petitioner was currently residing with his parents, including his father who is a registered sex offender; that he is currently receiving treatment at the methadone clinic for an opiate addiction; and, that he noticed the mother's strange behavior whenever she left him. At the time the DHHR filed its petition, petitioner also had a pending emergency domestic violence protective order against him that was filed by the children's mother. At the preliminary hearing, the circuit court found probable cause for the abuse and neglect petition to proceed forward.

1

At the adjudicatory hearing in October of 2012, the circuit court found that petitioner previously reported that he lived with his mother and his father, who is a registered sex offender. At the dispositional hearing in March of 2013, the CPS worker reported that there was a six-month period of time in which petitioner failed to respond to the DHHR despite its phone calls to his mother in attempts to contact him, that petitioner has been in substance abuse treatment for quite some time without any decrease in his methadone dosage, and that petitioner once allowed his father to transport his children in his vehicle during his improvement period. After finding that petitioner did not have any independent means of transportation and would need to rely on his sexual offender father and that petitioner continued to use methadone as part of his treatment, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect would be substantially corrected in the near future. The circuit court found that termination would be in the children's best interests. Accordingly, the circuit court entered a termination order on September 13, 2013. From this order, petitioner appeals.

This Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Petitioner raises three assignments of error on appeal. Petitioner first argues that the circuit court erred in finding that the DHHR showed by clear and convincing evidence that he abused and neglected his children. Petitioner asserts that the DHHR failed to prove that petitioner improperly used the methadone he was prescribed as part of his inpatient substance abuse treatment. He also asserts that no proof was given as to his former residence with his father. Upon our review of the record, we find no error in the circuit court's findings of abuse and neglect. Under West Virginia Code § 49-1-3(1)(B), the definition of an abused child includes those children whose health or welfare is threatened by sexual abuse or sexual exploitation. The record indicates that petitioner reported living with his parents when the DHHR initially filed the abuse and neglect petition. It is also undisputed that on one occasion, even after he left his parents' residence, petitioner allowed his one-year-old and three-year-old children alone in the car with his father, a registered sexual offender. We find no clear error with these findings nor with the circuit court's conclusions of abuse and neglect.

2

Next, petitioner argues that the Family Case Plan filed by the DHHR failed to comply with the requirements of West Virginia Code § 49-6D-3(a), which directs the DHHR to file a case plan within thirty days from the beginning of an improvement period. Indeed, this Court has held the following:

> Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

Syl. Pt. 5, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001). Notwithstanding the foregoing, as directed by Rule 2 of the Rules of Procedure for Child Abuse and Neglect, such rules and related statutes "shall be liberally construed to achieve safe, stable, secure permanent homes for abused and/or neglected children and fairness to all litigants." Upon our review of the record and the applicable law, we find no error. The transcripts included in the record clearly provide expressed concerns by the DHHR and the circuit court with regard to contact between petitioner's father and the children due to the grandfather's status as a registered sexual offender. It is clear from the transcripts that petitioner was advised that the potential placement and reunification of his children would be obstructed should he allow contact between the children and his father. Also, although it appears the Family Case Plans were untimely filed, the transcripts provide that the DHHR was in communication with petitioner for scheduled drug screens, visitations, and hearings throughout this case. Under these circumstances, we find no frustration of the rules or statutes as it pertains to securing the safety of the subject children. Accordingly, we find no error in this regard.

Lastly, petitioner argues that the circuit court erred in finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect or abuse in the near future. Petitioner asserts that his lapse in judgment in allowing his father to spend time alone with his children could be easily corrected in the near future. Upon our review of the record, we conclude that the circuit court properly terminated petitioner's parental rights. "'Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children.' Syl. Pt. 3, *In re Katie S.,* 198 W.Va. 79, 479 S.E.2d 589 (1996)." Syl. Pt. 2, *In re Timber M.*, 231 W.Va. 44, 743 S.E.2d 352 (2013). We have also held as follows:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 4, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Our review of the dispositional hearing transcript supports the circuit court's findings that petitioner improperly allowed alone time between his father and his children, despite prior directions by the circuit court to not allow such contact. The record also supports the circuit court's findings that petitioner depends on his parents, including his father, for transportation; that petitioner failed to maintain contact with the DHHR for a period of time; and that petitioner is not scheduled to complete his inpatient treatment in the near future. This evidence was sufficient to support the circuit court's findings and conclusions that there was no reasonable likelihood to believe that conditions of abuse and neglect could be substantially corrected in the near future, and that termination was necessary for the children's welfare. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon such findings.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 31, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II